Natalie Marcin SBN#351072
EarthLaw Attorney PC
10556 Combie Rd #31
Auburn, CA 95602
Email: natalie@earthlawattorney.com
Telephone: (301) 751 7554

Adam D. Brumm, Esq. SBN#257906
Eden Environmental Defenders
1520 E. Covell Blvd, Suite B5-611
Davis, CA  95616
Telephone: (800) 545-7215, Extension 906
Email: adam@edendefenders.org

*Attorneys for Plaintiff Central Valley Eden Environmental Defenders, LLC*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Central Valley Eden Environmental Defenders, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Thunderbolt Wood Treating Co., Inc., a California Corporation,<br><br>Defendant. | Case No. 2:26-cv-01699-TLN-SCR<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq.)** |

1

Central Valley Eden Environmental Defenders, LLC ("EDEN" or "Plaintiff") hereby alleges:

**I.      Jurisdiction and Venue**

1.      Plaintiff brings a civil suit under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. ("Clean Water Act" or "CWA"). 33 U.S.C. § 1365. Under 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201, this Court has subject matter jurisdiction over the parties and this action.

2.      On February 18, 2026, Plaintiff personally served a 60-day notice letter ("February Notice Letter") on Thunderbolt Wood Treating Co., Inc. ("Defendant " or "Thunderbolt"). Thunderbolt is the owner and/or operator of the industrial manufacturing facility located at 3400 Patterson Rd, Riverbank, California 95367 ("Facility"). The Notice Letter detailed the Defendant's violations of the Clean Water Act and California's General Permit for Discharges of Storm Water Associated with Industrial Activities (*National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, Water Quality Order No. Order 2014-0057-DWQ as amended in 2015 and 2018*) ("Permit"). A true and correct copy of the Notice Letter is attached as **Exhibit 1** and incorporated herein.[1]

3.      On May 12, 2026, Plaintiff personally served a second 60-day notice letter on Defendant ("May Notice Letter"). A true and correct copy of the May Notice Letter is attached as **Exhibit 2** and incorporated herein.

4.      Plaintiff's process server mailed the February Notice Letter via United States mail to the Defendant's Agent for Service of Process, located at the Facility's address. Plaintiff mailed the May Notice Letter to the Defendant's Agent for Service of Process, located at the Facility's address.

5.      Pursuant to 40 C.F.R. § 135.2(a)(1) and 33 U.S.C. § 1365(b)(1)(A), Plaintiff

---

[1] Claims and allegations not pursued in this pleading have been redacted from the Notice Letter for clarity.

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

mailed the February Notice Letter and the May Notice Letter to (1) the Administrator of the Environmental Protection Agency ("EPA"), (2) the Regional Administrator of EPA Region IX, (3) the Executive Officer of the California State Water Resources Control Board ("State Water Board"), and (4) the Executive Officer of the Central Valley Regional Water Quality Control Board ("Regional Board").

6.      More than sixty (60) days have passed since the February Notice Letter and the May Notice Letter were served on the Defendant and mailed to the required parties. On information and belief, neither the State nor Federal agencies have commenced or are diligently prosecuting an action to redress the violations alleged in the February Notice Letter, May Notice Letter, and this First Amended Complaint. 33 U.S.C. § 1365(b)(1)(B). No previous administrative penalty issued under CWA Section 309(g) prevents this action from proceeding.

7.      The CWA violations alleged herein occurred within the geographic boundaries of the United States District Court for the Eastern District of California. Thus, venue is proper under 33 U.S.C. § 1365(c)(1).

**II.      <u>Introduction</u>**

8.      Plaintiff seeks relief for Defendant's violations of the Permit and CWA occurring at the Facility.

9.      Defendant has failed to follow numerous Permit provisions designed to prevent contaminated storm water from discharging into the City of Riverbank Municipal Separate Storm Sewer System ("MS4"), which feeds into the Stanislaus River. The Stanislaus River flows into the San Joaquin River, the Sacramento Delta, including the Suisun Marsh Wetlands, the San Pablo Bay, the San Francisco Bay, and the Pacific Ocean. These downstream waters are collectively referred to as the "Receiving Waters."

10.      Defendant's Permit failures result in significant impacts to (1) the flora, fauna, and ecology generally, and (2) the public, including EDEN's members, who

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

use the Receiving Waters to recreate.

11.    Pollution from the Facility threatens the overall health of the Receiving Waters and, in turn, the plants and animals that depend on these habitats. When these natural systems are damaged, the public, including EDEN's members, lose valuable recreational, educational, and scientific opportunities. Such contamination can also pose risks to human health. As a result, EDEN's members are less inclined to visit or recreate near waters known to contain harmful metals, high nutrient levels, and other pollutants, including those associated with the Facility.

**III.    Parties**

12.    Thunderbolt Wood Treating Co., Inc. ("Thunderbolt") is a California corporation that owns and/or operates the Facility.

13.    EDEN is an environmental citizen's group established under the laws of the State of California to protect, enhance, and assist in the restoration of all rivers, creeks, streams, sloughs, lakes, and tributaries of California for the benefit of its ecosystems and communities.

14.    EDEN's membership includes individuals who live, work, travel, and engage in recreational activities throughout Stanislaus County.

15.    EDEN's members use and enjoy the Receiving Waters, along with the adjacent riparian, wetland, and beach areas, for recreational and aesthetic purposes, including wildlife observation.

16.    EDEN's members use and enjoy the Receiving Waters and surrounding ecosystems and wetlands for a wide range of activities. They frequently visit various areas downstream from the Facility for swimming, fishing, hiking, biking, enjoyment of natural open spaces, general aesthetic appreciation, birdwatching, and observation of other fauna, including butterflies, fish, reptiles, and mammals. EDEN's members intend to continue recreating in and around the Stanislaus River.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

17.    For example, less than a mile downstream of the Facility lies Jacob Myers Park, a popular contact recreation location. Image 1[2] below was taken by a member of Plaintiff's organization while visiting the park and shows families recreating in the Stanislaus River.



18.    The CWA and Permit violations alleged in this First Amended Complaint cause direct injury to the recreational and aesthetic interests of EDEN's members. These injuries are concrete and particularized to EDEN's members.

19.    Defendant's CWA and Permit violations as alleged herein reduce EDEN's members' use and enjoyment of the Receiving Waters and the surrounding ecosystems into which they flow.

20.    Defendant's CWA and Permit violations as alleged herein diminish the ability of EDEN's members to engage in recreational and aesthetic pursuits in these downstream waters and ecosystems.

---

[2] Google Gemini was used to blur the people. No other alteration was made to the photograph.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

21.    Aware of Defendant's CWA and Permit violations pollution concerns discussed herein, EDEN's members avoid or limit activities such as swimming, fishing, kayaking, and other contact or non-contact recreation with the Receiving Waters when they would otherwise choose to participate.

22.    EDEN's members have a vested interest in healthy ecosystems and thriving natural flora and fauna populations. Defendant's failure to comply with the Permit as alleged herein allows pollutants associated with Defendant's industrial processes to harm aquatic life and riparian species that EDEN's members observe, consume, and contemplate spiritually, while also degrading the ecosystems and habitats the members work to protect and enjoy.

23.    EDEN's members have an interest in accurate information regarding Defendant's discharges. Defendant's failure to accurately report and monitor impedes EDEN's members' ability to fully use and enjoy the Receiving Waters for aesthetic and recreational purposes.

24.    EDEN's members have been deprived of their right to obtain complete and accurate information regarding Defendant's compliance with the Permit. The informational provisions of the Permit have been instituted by relevant regulatory agencies to protect the Waters of the United States.

25.    Defendant's failure to submit accurate and complete information to SMARTS[3] in accordance with the Permit provisions designed to protect the Receiving Waters causes informational injuries to EDEN's members.

26.    The informational injuries result in EDEN's members being unable to assess the extent of Defendant's Permit violations, a right conferred on the public under the CWA.

27.    Unless the relief sought in this First Amended Complaint is granted, these interests have been, are being, and will continue to be adversely and irreparably

---

[3] Stormwater Multiple Application and Report Tracking System ("SMARTS").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

harmed by Defendant's failure to comply with the CWA and Permit.

28.     The injuries to Plaintiff's members are actual, concrete, and traceable to Defendant's conduct, and redressable by the requested relief.

29.     An actual controversy exists as to the rights and other legal relations between Defendant and Plaintiff.

**IV.    Legal Background**

30.     The CWA requires all storm water dischargers regulated under the CWA to achieve technology-based effluent limitations using the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants. 33 U.S.C. § 1311(b); 40 C.F.R. §125.3(a)(2)(ii)-(iii).

31.     The CWA authorizes private citizens to sue to enforce the provisions of the Permit. 33 U.S.C. § 1365(a)(1), (f)(6); *Russian River Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1139 (9th Cir.1998).

32.     The CWA allows states to administer their own EPA-approved NPDES permitting program, including storm water NPDES. The EPA has approved California's NPDES permitting program. The State Water Board issues these permits. Cal. Water Code § 13001.

33.     The State Water Board issued a general NPDES permit for industrial manufacturing facilities, which is the Permit as described in Section I, *supra*. Before beginning operations, a facility subject to the Permit that wishes to discharge storm water offsite must apply for coverage by submitting a Notice of Intent ("NOI") to the State Water Board to enroll under the Permit and comply with the Permit's terms. Permit § I.A.17.

34.     Industrial manufacturing facilities with SIC code  2491 (Wood Preserving Establishments) require Permit coverage. Permit, Attachment A.

A.     Effluent Limitations

35.     The Permit requires dischargers to implement BMPs [Best Management

Practices] that comply with BAT for toxic and non-conventional pollutants and BCT for conventional pollutants. Permit § V.A.

36.    Toxic pollutants include copper, lead, and zinc, among others. 40 C.F.R. § 401.15.

37.    Conventional pollutants include total suspended solids ("TSS"), oil and grease ("O&G"), pH, nitrate + nitrite ("N+N"), iron, phosphorus, and enterococcus, among others. 40 C.F.R. § 401.16.

38.    Dischargers must implement BAT/BCT compliant BMPs to "reduce or prevent discharges of pollutants in their storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and achievability." Permit § V.A.

39.    Failing to develop or implement BMPs that meet BAT and BCT standards violates Permit Section V.A. 33 U.S.C. § 1311(b); 2020 Permit § V.A.

B.    Storm Water Pollution Prevention Plan Requirements

40.    The Permit requires that dischargers develop and implement a site-specific Storm Water Pollution Prevention Plan ("SWPPP") requirements and Monitoring Implementation Plan ("MIP") designed to reduce and prevent pollutants from contaminating storm water. The SWPPP must identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, develop and implement site-specific BMPs to prevent the exposure of pollutants to storm water, and reduce or prevent the discharge of polluted storm water from industrial facilities. Permit § X.C.

41.    The SWPPP must outline the necessary BMPs to meet BAT/BCT standards at the facility, based on site-specific conditions and pollutants, and must be revised as necessary to reflect any changes.

42.    The SWPPP must include the following non-exhaustive elements:

(1) A narrative description and summary of all industrial activities, potential pollutant sources, and potential pollutants;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

(2) A site map showing the storm water conveyance system, discharge points, flow direction, areas of actual or potential pollutant contact, nearby water bodies, and all pollutant control measures, among others;

(3) A description of storm water management practices;

(4) A description of the BMPs that meet BAT/BCT requirements;

(5) Procedures and BMPs for identifying and eliminating non-storm water discharges;

(6) The locations where materials are shipped, stored, received, or handled, including typical quantities and handling frequency;

(7) A description of dust- and particulate-generating activities;

(8) A list of the individuals responsible for developing and implementing the SWPPP, along with their current roles;

(9) A Monitoring and Implementation Plan ("MIP") that ensures compliance with the Permit including identifying monitoring tasks, discharge locations, visual observation and sampling procedures, justification for alternative discharge locations or sampling reductions if applicable, and an example chain of custody. The MIP also enumerates a team designated to implement the Permit requirements. Permit § X.A-I.

43.    Dischargers must review their SWPPP at least once per year and update it as needed to remain in compliance with the Permit. Any significant revision to the SWPPP must be certified and submitted through SMARTS within 30 days. Permit § X.A-I.

C.    Monitoring and Reporting

44.    The Permit requires the Facility to monitor storm water discharges through (1) monthly visual observations, (2) sampling event observations, and (3) sampling its storm water runoff. Permit § XI.

45.    At least once per month, the Facility must inspect each drainage area for prior, current, or present unauthorized NSWDs, authorized NSWDs, and associated

9

BMPs, and outdoor industrial activities and respective BMPs implementation. While sampling, the discharger shall observe whether the storm water had any floating or suspended materials, oil and grease, turbidity, odors, and potential sources of pollutants.

46.    With respect to storm water sampling, a facility must collect four samples per reporting year: two during the first half of the reporting year (July 1–December 31) and two during the second half (January 1–June 30). If the facility participates in a compliance group, it is required to collect only one sample in each half of the reporting year (two total). All samples must be collected during a Qualified Storm Event ("QSE"). A QSE occurs when a precipitation event produces a "discharge for at least one drainage area; and . . . preceded by 48 hours with no discharge from any drainage area." The sample must be collected within four hours of the start of the discharge or the "start of the facility operations if the QSE occurs within the previous 12-hour period." Permit § XI.B.

47.    The Facility must monitor for (1) TSS, (2) oil and grease, (3) pH, (4) any SIC code specific parameters, (5) potential pollutants associated with the facility's industrial sources for which the Receiving Waters have 303(d) impairments or approved TMDLs, and (6) "identified by the [d]ischarger on a facility-specific basis that serve as indicators of the presence of all industrial pollutants identified in the pollutant source assessment," among others. Permit § XI.B.6. All sampling results must be uploaded to SMARTS within thirty days of obtaining said results. Permit § XI.B.11.

48.    The Facility must properly train its employees to implement the Permit including BMP implementation, BMP effectiveness, and observation activities, among others. Permit § X.H.1.f.

D.    Annual Reporting

49.    Each year, by July 15th, the discharger "shall certify and submit via SMARTS an Annual Report." The Annual Report shall include: (1) a compliance

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

checklist indicating the facility complied with and "addressed all applicable requirements" of the Permit, (2) an explanation for any non-compliance, (3) any SWPPP amendments within the reporting year, and (4) the date of the Annual Evaluation. The Annual Evaluation consists of a single comprehensive review of the facility's storm water practices, including an assessment of the prior year's sampling, visual monitoring, and observation records; an inspection of the facility's industrial activities and associated potential pollutants; an examination of drainage areas; an evaluation of any new BMPs and related equipment; and a review of the overall effectiveness of the BMPs. Permit § XVI.

## V.     Facts

50.     The May Notice Letter, February Notice Letter, and Facility public records were analyzed by an expert consultant who is both a Qualified Industrial Storm Water Practitioner and hydrologist.

51.     Defendant's Facility "performs chemical treatment of wood products to increase resistance to microbial decay and insect damage" under SIC 2491 (Wood Preserving Establishments).

52.     Defendant first applied for Permit coverage on May 22, 2020, and was issued Waste Discharge Identification Number ("WDID") 5S50I028660.

53.     Defendant certified and submitted to SMARTS its most recent NOI on May 22, 2022.

54.     In response to the February Notice Letter, the Defendant certified and submitted to SMARTS an updated SWPPP and Site Map on April 24, 2026 ("April SWPPP" and "April Site Map").

55.     In response to the May Notice Letter, the Defendant certified and submitted to SMARTS an updated SWPPP and Site Map on June 9, 2026 ("June SWPPP" and "June Site Map")

56.     To effectuate its manufacturing, Defendant's Facility cuts, treats, and dries wood; stores raw and industrial materials; stores, uses, and maintains equipment

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

such as forklifts; and ships and receives goods.

57.    *The EPA Industrial Stormwater Fact Sheet Series, Sector A: Timber Products Facilities* identifies pollutants associated with wood preserving including total suspended solids ("TSS"), biochemical oxygen demand, chemical oxygen demand, heavy metals, arsenic, benzene, and acid/alkaline wastes, among others.

58.    The Defendant has a history of failing to comply with Permit obligations and other environmental statutes. For example, Defendant has been issued four notices of violation by the Regional Board for its Title 27 Permit since 2018, including for lack of freeboard space.[4] The lack of freeboard space directly pertains to the Facility's ability to retain storm water onsite.

59.    Numerous industrial operations and materials at the Facility are located outdoors without sufficient roofing or other protection to keep storm water and non-storm water flows from contacting pollutant sources. In many areas, the Facility also lacks proper secondary containment or other necessary treatment controls to stop contaminated storm water or non-storm water from leaving the site.

60.    Pollutants generated indoors or beneath partial cover also routinely escape through wind dispersion, vehicle and foot traffic, and other pathways, spreading contamination throughout the Facility grounds. Pollutants from the Facility's industrial activities are, and have been, transported across the site and beyond its boundaries through tracking by vehicles and employees, wind, and storm water movement around the Facility.

61.    Defendant has not submitted to the State Water Board a "No Discharge Technical Report" to pursue a No Discharge Certification under the Permit's Notice of Non-Applicability provision ("NONA"), as confirmed by public records. A No Discharge Certification requires a showing that the Facility is engineered to contain

---

[4] Freeboard space refers to the vertical distance between the water level and top of the structure. This space prevents overtopping and accounts for wave action, among others.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

the maximum historic precipitation. Permit § XX.C.

62.    The Stanislaus River is a water of the United States.

63.    On information and belief, the Facility's storm water discharges offsite from multiple discharge locations into the City of Riverbank Municipal Separate Storm Sewer System ("MS4") and flows north into the Stanislaus River.

64.    Defendant's obligations under the Permit, including the development, implementation, and revision of an adequate SWPPP and MIP, the implementation of BAT/BCT-compliant BMPs, monthly visual observations, storm water collection and analysis, employee training, and accurate reporting and certification through SMARTS, apply at all times the Facility operates under Permit coverage, irrespective of whether an offsite discharge occurs during any particular period. Having neither terminated its Permit coverage nor obtained a No Discharge Certification as described in Paragraph 61, Defendant remains subject to all Permit requirements. Defendant's asserted onsite retention of storm water does not suspend, excuse, or moot those obligations.

A.    Failure to Implement BMPs

65.    Defendant has failed to develop adequate BMPs that comply with BAT/BCT technology.

66.    Defendant has failed to implement basic BMPs at its Facility, such as covering industrial materials or storing them under a shelter.

67.    On January 30, 2025 and February 6, 2025, the Regional Board inspected the Facility. The Regional Board identified numerous failures to comply with Permit BMPs including evidence of spills and leaks without proper cleanup, uncontained drums with residue, rusty inutile equipment, rusty, uncovered industrial waste storage, chemical soaked drip pad, uncovered industrial materials (such as lumber and uncovered poly urea coated equipment), among others. During a rain event, the Facility left uncovered industrial materials like wood, waste storage, and chemical drums. Exhibit 1.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

68.    The Regional Board inspected the Facility on February 25, 2026. Photographs taken by Regional Board staff during the inspection confirm Defendant's ongoing failure to implement sufficient BMPs. The photographs revealed that the Defendant continued to have onsite (1) rusty industrial storage tanks and containers, (2) significant particulate accumulation on impervious surfaces, (3) unmaintained/dense vegetation, (4) evidence of sumps lacking adequate capacity, (5) industrial equipment stored outdoors without cover, (6) waste barrel not stored in secondary containment, and (7) used, dirty pallets and poorly tarped industrial materials, among other evidence of poor housekeeping and BMPs. Exhibit 2.

69.    The Facility implements storm water containment and discharge reduction BMPs, including a storm water basin in the southwestern corner ("storm water basin") and a bioswale near the Pole Yard ("bioswale").

70.    The Facility's containment systems are not designed or maintained in compliance with Permit Section X.H or to the BAT/BCT standard. On information and belief, the containment systems cannot consistently retain the volume of runoff produced from an 85th percentile 24-hour storm event, as calculated by a California licensed professional engineer.

71.    Photographs from the Regional Board's January 30, 2025, February 6, 2025, and February 25, 2026, inspections depict unmaintained vegetation within the storm water basin and bioswale.

72.    The Facility has historic TSS exceedances and is in Level 2 for TSS, including recent results as high as 572 mg/L.  High levels of TSS are indicative of excess sedimentation within the Facility's storm water basin and bioswale.

73.    All new treatment control BMPs employed by the Facility must meet Permit Section X.H.6 standards. The Facility's April SWPPP and June SWPPP lack evidence that the bioswale meets the design storm standards in Permit Section X.H.6. The July 17, 2025 Exceedance Response Action report does not identify any

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

Factor of Safety for the bioswale design, and on information and belief, no design margin was calculated.

74. On information and belief, the Defendant fails to maintain bioswale capacity such as regular sediment and vegetation removal and/or installation and operation of a pump to convey water to additional containment to allow for draw down between rain events, as required by BAT/BCT.

75. The Defendant fails to provide any calculations or analysis on the retention capacity of the storm water basin.

76. On information and belief, the Defendant has failed and continues to fail to implement BMPs to maintain capacity of the storm water basin, such as regular sediment and vegetation removal and/or installation and operation of a pump to convey water to additional containment to allow for draw down between rain events, as required by BAT/BCT.

77. Absent any engineering calculation of the retention capacity of the storm water basin or bioswale, and given the documented sediment accumulation and vegetation described in Paragraphs 71 and 72, the Defendant cannot demonstrate, and Plaintiff alleges on information and belief that it is not the case, that these features retain all storm water during significant precipitation events. During such events, storm water discharges or is likely to discharge offsite from the storm water basin and the bioswale.

78. The significant pooling observed by the Regional Board during the February 2026 inspection supports the conclusion that the bioswale is inadequately sized and/or maintained.

79. The June SWPPP contains the same inaccurate characterizations of the interplay between the Title 27 Permit and the Permit. Storm water that contains industrial material, or uncontaminated storm water that commingles with industrial storm water, is regulated under the Permit regardless of whether that industrial material originates from treated wood, treatment chemicals, or exceeds elevated

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

pollutant concentrations, if said storm water discharges to the MS4. Because Defendant lacks foundational understanding of Permit requirements for the pollutants generated on site, Defendant cannot properly implement BAT/BCT for these pollutants.

80.    The region's rain intervals require a significant focus on consistent BMP implementation and maintenance, including for the bioswale and storm water basin. Exhibits 1 and 2.

81.    Google Earth imagery shows significant material trackout from the Facility's ingress and egress, also demonstrating a lack of adequate BMPs.

B.    <u>Failure to develop and implement an adequate SWPPP</u>

82.    Defendant operates the Facility under a SWPPP that is inadequately developed and implemented.

83.    The Defendant's 2020 SWPPP contains significant deficiencies, as outlined in the February Notice Letter. The April SWPPP includes some of the same deficiencies.

84.    The April SWPPP fails to provide the site-specific BMP descriptions required by Permit Section X.H. Although the SWPPP recites the required elements and provides a summary table, the descriptions are generic and incomplete: the SWPPP does not identify the individual or position responsible for implementing each BMP, instead assigning all BMPs collectively to a five-member team; its procedures consist of one-line descriptions that provide no implementation instructions; and it asserts, without identifying or justifying them, that non-implemented minimum BMPs are not applicable or appropriate. As one example of deficiency, the SWPPP contains no maintenance procedures for sediment or vegetation in the storm water basin and bioswale, and fails to specify the tools, frequency, or responsible personnel for such maintenance.

85.    The Defendant's April SWPPP failed to list all spill locations which leaked industrial materials in significant quantities. The April SWPPP fails to comply with

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

numerous components of Permit Section X.G.d such as omitting the approximate quantity of the materials spilled, a five year look back period, and preventative measures to prevent reoccurrence.

86.    Defendant's April SWPPP fails to identify all industrial materials present at the Facility, as required by Permit Section X.F. For example, the SWPPP identifies five treatment chemicals but fails to list (1) the specific fire-retardant chemicals used and (2) the approximate quantities of each chemical. Instead, the Facility's SWPPP lumped the five chemicals together on the industrial materials. The April SWPPP lacks the required associated information, such as where each material was handled as opposed to simply stored.

87.    The April SWPPP fails to identify phosphorus, iron, and chemical oxygen demand as associated pollutants.

88.    The Facility implements storm water containment and discharge reduction BMPs, including a storm water basin and a bioswale. The April SWPPP, however, fails to describe maintenance BMPs for these basins that comply with BAT/BCT. For example, the April SWPPP fails to contain maintenance procedures that maintain the design capacity and treatment function of the bioswale and storm water basin, such as sediment removal criteria or vegetation management.

89.    The Defendant's April SWPPP fails to describe the storm water containment and discharge reduction BMPs in accordance with Permit Section X.H.6, including maintenance as described in Paragraph 88.

90.    The Defendant's April SWPPP fails to include an adequately conducted pollutant source assessment and associated BMPs and does not sufficiently account for pollutant tracking between drainage areas via equipment, employees, materials themselves, and more.

91.    The Defendant's April Site Map fails to comply with Section X.E, as it does not depict any sampling locations in the area designated as drainage area #2; fails to clearly identify the sampling location in the area designated as drainage area #1;

17

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

and fails to accurately depict storm water flow in each drainage area, among other deficiencies.

92.    The June SWPPP remains deficient as outlined in the May Notice Letter. The June SWPPP failed to cure the deficiencies identified in Paragraphs 84, 86, 87, 88, 89, and 90.

93.    The Defendant's June SWPPP fails to comply with Permit Section X.G.d by omitting a five-year look back period.

94.    The June SWPPP fails to identify all discharge locations that require sampling, in violation of Permit Section X.I.2. On information and belief based on USGS topographical maps, the Facility discharges storm water from the southeastern corner, the driveway, and, during heavy rain events, the storm water basin.

95.    The June SWPPP's evaluation of NSWDs is incomplete. The SWPPP acknowledges the potential for NSWDs (e.g., fire hydrant flushing) and asserts they are fully contained and not discharged, but it does not identify all NSWD sources and does not describe the quantity, characteristics, or associated drainage area of each NSWD, or confirm each is authorized. Assertions of containment and prohibition do not substitute for the required evaluation and descriptions.

96.    As discussed in Paragraph 79, the Facility's June SWPPP misapplies foundational Permit requirements, in violation of Permit Sections X.C and X.D.2.a.

97.    The June SWPPP relies on documents outside the SWPPP to supply required SWPPP content. To the extent the required BMP descriptions, procedures, and maintenance requirements reside in the Title 27 Operations and Maintenance Plan or related documents, those elements are not properly referenced or maintained as part of the SWPPP, in violation of Section X.D.2.c; to the extent they do not, the SWPPP omits them entirely, as alleged in Paragraphs 84 and 92.

98.    The June Site Map fails to contain all required parameters such as drainage area #2's sampling location(s); fails to clearly identify the sampling location in

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

drainage area #1; and to accurately depict the direction of storm water flow in each drainage area, among other deficiencies.

99. Permit Section X.H requires that the Facility develop and implement a SWPPP that complies with BAT/BCT. Notably, the lack of sufficient minimum BMPs elucidated by the Regional Board inspections of the Facility confirm Defendant's failure to implement all minimum BMPs mandated by the Permit. Required BMPs include good housekeeping throughout the Facility, preventive maintenance of equipment and systems used outdoors, spill and leak prevention and cleanup, proper material handling and waste management, maintenance of sufficient erosion and sediment controls, implementation and maintenance of a sufficient employee training program and maintenance of the efficacy of BMPs through quality assurance and proper record keeping.

100. Dischargers are required to implement and maintain advanced BMPs to the extent feasible and where necessary to further reduce or prevent discharges of pollutants in the facility's storm water discharges. Advanced BMPs include exposure minimization, storm water containment and discharge reduction and treatment control measures. The Facility is at Level 2 for copper and TSS, indicating the need for advanced BMPs. The Defendant's Facility fails to effectively and properly implement advanced BMPs.

101. The Defendant has failed to update its SWPPP in accordance with the requirements of the Permit. The Permit requires at least an annual analysis of SWPPP adequacy and an obligation to revise the SWPPP on an ongoing basis as needed. Any substantial SWPPP modifications must be submitted to SMARTS within thirty days. Defendant failed to revise its SWPPP between 2020 and 2026, and both 2026 revisions were made after threat of litigation, in direct response to deficiencies identified in the May Notice Letter and February Notice Letter.

C.     Failure to Adequately Monitor and Report

102. Defendant operates the Facility with an inadequate MIP.

19

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

103.   Defendant fails to conduct adequate monitoring and reporting at the Facility.

104.   Defendant has failed, and continues to fail, to analyze its storm water discharges for all parameters required by the Permit, including at the minimum iron, phosphorus, and COD, in addition to the sampling parameters identified in the SWPPP.

105.   Defendant has failed, and continues to fail, to collect the required four storm water samples each Reporting Year.

106.   Defendant has failed and continues to fail to identify collect and analyze storm water samples all drainage areas and discharge locations.

107.   Permit Section X.H.1.f requires that the Facility train its Pollution Prevention Team to implement the Permit including BMP implementation, BMP effectiveness, visual observations, and monitoring activities. Given the numerous deficiencies discussed in this pleading, the Facility has failed to adequately train its Pollution Prevention Team.

108.   Defendant has violated sampling collection protocols outlined in Permit Attachment H, including failing to deliver storm water samples to its laboratory within 48 hours of collection.

109.   Defendant has failed to implement BMPs sufficient to prevent the discharge of pollutants. As a result, the Facility has also failed to conduct adequate monitoring as required by the Permit, including performing the required monthly visual observations of BMP implementation. The Regional Board identified a failure to comply with Permit Section X.H.1 for numerous reasons including the storage of rusted equipment and material, evidence of leaks and spills, and improper chemical handling and storage.

D.     Failure to Accurately Certify and Submit Documents to SMARTS

110.    Defendant has submitted to SMARTS multiple Annual Reports, each accompanied by a certification asserting that all information contained in the Report was true and correct.

20

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

111. The Facility's Duly Authorized Representative, Alex Flores, submitted inaccurate Annual Reports to SMARTS on August 16, 2024; September 6, 2023; July 13, 2022; and July 30, 2021.

112. Defendant's 2024 Annual Report indicates that Defendant did not collect the required number of storm water samples due to lack of rain. As discussed in Paragraphs 105 and 106, and Exhibits 1 and 2, NOAA Data, on information and belief, this is not true.

113. Defendant, through Alex Flores, attested in its 2023 Annual Report that the requisite number of storm water samples were collected during the reporting year. As discussed in Paragraphs 105 and 106, and Exhibits 1 and 2, this is not true, as the Facility did not collect storm water samples from each drainage area.

114. Defendant, through Alex Flores, attested in its 2022 Annual Report that Defendant could not collect the required samples due to insufficient rainfall. As discussed in Paragraphs 105 and 106, and Exhibits 1 and 2, on information and belief, this is not true.

115. Defendant, through Alex Flores, attested in its 2021 Annual Report that it could not collect the required number of storm water samples due to insufficient rainfall. As discussed in Paragraphs 105 and 106, and Exhibits 1 and 2, NOAA Data, on information and belief, this is not true.

116. Alex Flores knew or should have known of these inaccurate statements in the Annual Reports that he personally certified were true and correct.

117. The inaccurate and/or misleading Annual Reports continue to be maintained on SMARTS.

118. The Defendant's June SWPPP contains inaccurate information as described in Paragraphs 92 and 94. Alex Flores certified to the accuracy of these statements and knew or should have known of these inaccurate statements.

119. The Defendant's April SWPPP contains inaccurate information as described in Paragraphs 86, 87, and 91. Alex Flores certified to the accuracy of these

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

statements and knew or should have known of these inaccurate statements.

120.   Defendant's inaccurate and/or misleading SWPPPs continue to be maintained on SMARTS.

121.    The Defendant's failure to meet the Permit's reporting obligations, along with the submission of false or misleading information, places the Facility in ongoing, daily noncompliance with the Permit.

**VI.    Claims for Relief**

**FIRST CAUSE OF ACTION**

**Failure to implement BMPs that comply with BAT/BCT**

**33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)**

122.   The foregoing allegations are incorporated herein by reference.

123.   Defendant is a responsible party under the CWA.

124.   Defendant has failed and continues to fail to implement Permit-compliant BMPs designed to reduce or prevent contaminated storm water through use of BAT/BCT, in violation of Permit Section V.A.

125.   Defendant has failed and continues to fail to adequately train its employees on implementation of required BMPs, in violation of Permit Section V.A.

126.   Defendant has been in violation of Permit Section V.A since at least February 24, 2021. Defendant's violations are ongoing and continuous.

127.   Each day the Facility operates without developing BAT/BCT compliant BMPs constitutes separate and distinct violations of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

128.   For each violation of Permit Section V.A, the Facility is subject to civil penalties.

**SECOND CAUSE OF ACTION**

**Failure to develop, implement, and maintain an adequate SWPPP and MIP**

**33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)**

129.   The foregoing allegations are incorporated herein by reference.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

130. Defendant has failed and continues to fail to develop an adequate SWPPP, in violation of Permit Section X.

131. Defendant has failed and continues to fail to implement an adequate SWPPP, in violation of Permit Section X.

132. Defendant has failed and continues to fail to revise its SWPPP, in violation of Permit Section X.

133. Defendant has failed and continues to fail to develop an adequate MIP, in violation of Permit Section X.

134. Defendant has failed and continues to fail to implement an adequate MIP, in violation of Permit Section X.

135. Defendant has failed and continues to fail to revise an adequate MIP in violation of Permit Section X.

136. Defendant has failed and continues to fail to adequately train its employees on proper SWPPP implementation, in violation of Permit Section X.

137. Defendant has been in violation of Permit Section X since at least February 24, 2021. Defendant's violations are ongoing and continuous.

138. Each day the Facility operates without developing an adequate SWPPP constitutes separate and distinct violations of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

139. Each day the Facility operates without implementing an adequate SWPPP constitutes separate and distinct violations of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

140. Each day the Facility operates without revising the SWPPP constitutes separate and distinct violations of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

141. Each day the Facility operates without developing an adequate MIP constitutes separate and distinct violations of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

142.  Each day the Facility operates without implementing an adequate MIP constitutes separate and distinct violations of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

143.  Each day the Facility operates without implementing an adequate MIP constitutes separate and distinct violations of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

144.  Each day the Facility operates adequately train its employees on proper SWPPP implementation constitutes separate and distinct violations of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

145.  For each violation of Permit Section X, the Facility is subject to civil penalties.

**THIRD CAUSE OF ACTION**

**Failure to implement an adequate monitoring and reporting program**

**33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)**

146.  The foregoing allegations are incorporated herein by reference.

147.  Defendant has failed and continues to fail to conduct adequate monthly inspections, in violation of Permit Section XI.

148.  Defendant has failed and continues to fail to collect the required number of storm water samples, in violation of Permit Section XI.

149.  Defendant has failed and continues to fail to analyze its storm water samples for all required constituents, in violation of Permit Section XI.

150.  Defendant has failed and continues to fail to adequately train its employees on monitoring and reporting in violation of Permit Section X.H.1.f.

151.  Defendant has been in violation of Permit Sections XI and X.H.1.f since at least February 24, 2021. Defendant's violations are ongoing and continuous.

152.  Each failure to adequately monitor and/or train constitutes a separate and distinct violation of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

153.   For each violation of Permit Section X and XI, the Facility is subject to civil penalties.

### FOURTH CAUSE OF ACTION

**Inaccurate Certification and Submission of Documents to SMARTS**

**33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)**

154.   The foregoing allegations are incorporated herein by reference.

155.   Defendant has failed and continues to fail to submit accurate Annual Reports in violation of Permit Section XVI.

156.   Defendant has failed and continues to fail to submit accurate Annual Reports in violation of Permit Sections XXI.K and XXI.L.

157.   Defendant has failed and continues to fail to submit accurate SWPPPs in violation of Permit Section X.

158.   Defendant has failed and continues to fail to submit accurate SWPPPs in violation of Permit Sections XXI.K and XXI.L.

159.   Each day the Facility operates without accurate Annual Reports is a separate and distinct violation of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

160.   Each day the Facility operates without accurate SWPPPs is a separate and distinct violation of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

161.   Defendant has been in violation of Permit Section XVI since at least February 24, 2021. Defendant's violations are ongoing and continuous.

162.   Defendant has been in violation of Permit Section XXI.K-L since at least February 24, 2021. Defendant's violations are ongoing and continuous.

163.   Defendant has been in violation of Permit Section X since at least February 24, 2021. Defendant's violations are ongoing and continuous.

164.   For each violation of Permit Sections XVI, XXI.K-L, and X the Facility is subject to civil penalties.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

## VII.  **Relief Request**

165.  Plaintiff respectfully requests the Court grant the following relief:

(1) A court order declaring Defendant in violation of Sections 301(a) and (b) of the CWA for failure to comply with all Permit provisions.

(2) A court order enjoining Defendant from continuing to violate the CWA and Permit.

(3) A court order requiring Defendant to implement injunctive measures that rectify Defendant's violations of the CWA and Permit.

(4) A court order assessing civil penalties for the aforementioned violations at $68,446 per day per CWA violation that occurred after November 2, 2015, and assessed on or after January 9, 2025.

(5) A court order awarding reasonable fees and costs to Plaintiff, including attorney fees and witness fees pursuant to Section 505(d) of the CWA.

(6) Any other relief the Court deems appropriate.

Date: July 12, 2026                              Respectfully,


By: /s/Natalie Marcin
Natalie Marcin
Attorney for Plaintiff
Central Valley Eden Environmental
Defenders, LLC
Email: natalie@earthlawattorney.com

26

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES